CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
November 25, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONNIE D. GOAD, ) | |
|     Plaintiff, ) | Civil Action No. 7:24cv00309 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| DEPUTY ANDREW KINNEY[1], et al. ) | By:  Robert S. Ballou |
|     Defendants. ) | United States District Judge |

Ronnie D. Goad, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging excessive force by the defendants at the Patrick County Jail. The defendants move for summary judgment, claiming Goad failed to exhaust his administrative remedies before filing suit as required. Because I find a genuine dispute of material facts exists regarding whether the grievance process was available to Goad, I will deny defendants' motion.

## I.  BACKGROUND

Goad's verified Complaint alleges that the defendants assaulted him while he was handcuffed and shackled to a bench in the intake area of the Patrick County Jail. Specifically, he alleges that Deputy Kinney pushed a finger into his head and put his body weight on Goad's ribs and neck, while Deputy Haynes helped or watched, and that Deputy Nester cut him causing Goad's left arm to bleed. Liberally interpreting these *pro se* pleadings, Goad alleges a claim of excessive force in violation of the Eighth Amendment.

Goad's Complaint states that he did not file any grievances about the incident, indicating that although he asked for a grievance form, his request was denied, and that it was very difficult

---

[1] In their Memorandum in Support of Motion for Summary Judgment, the correct full names and spellings of the three named defendant are provided: Deputy Kenny is Deputy Andrew Kinney; Deputy Haynes is Deputy Robbie Haynes; Deputy Nester is Mike Nester.  The Clerk shall update the docket accordingly.

to get grievance forms. Goad elaborated, stating that jail staff gave him "issues" when he was trying to find out the names of the deputies involved, and he asked for several other "grievances," to no avail.

In their motion for summary judgment, the defendants rely on the affidavit of Major Rob Coleman to explain the grievance process at the Patrick County Jail. Major Coleman's affidavit attached what he purported was the inmate grievance procedure "promulgated" by the Patrick County Jail. That procedure, in its entirety, sets out the following for addressing inmate grievances.

> Inmates must start with an informal grievance that should be known to a deputy on duty during that shift in which the problem occurred. An attempt shall be made to work out the problem, verbally. If the verbal attempt fails the inmate must request a Complaint Request Form. The inmate fills out this form completely and returns it to a deputy on duty. The deputy will have a shift supervisor review and answer the form. If the problem is not resolved, the inmate may proceed with a written formal grievance. The grievance will not be processed if there was no attempt to handle informally.
>
> 1. A grievance must be in writing.
> 2. A grievance must be dated and signed by the grieving inmate.
> 3. A grievance shall be forwarded through the chain of command to the Lieutenant, Master Deputy, or Sergeants that is [sic] not involved with the grievance.
> 4. The Lieutenant or Master Deputy who shall review each grievance and render a written reply to the inmate within nine (9) working days from the time of the grievance is received. The reply will include the reason for the decision.
> 5. After the Lieutenant has rendered his/her decision regarding the grievance, the inmate may appeal such decision to the Sheriff.
>
> The decision of the Sheriff is **final.**

Dkt. No. 38-1 at 6–7.

The grievance procedure provided to inmates was also attached to Major Coleman's affidavit. This procedure, although similar to the policy promulgated by the jail, is more detailed

and has additional requirements for an inmate to exhaust the grievance process. That procedure, in its entirety, states as follows:

I. Inmate Grievance Procedure
   A. Introduction
      1. A grievance is a complaint by an inmate about the substance or application of *any* written jail policy, procedure, rule or regulation; about *any* behavior, action or inaction, directed toward an inmate by a facility employee, volunteer, or other inmate; or about conditions or confinement
      2. The purpose of this written grievance procedure is:
         a. To insure that inmate complaints are given adequate consideration and full opportunity for proper resolution.
         b. To assist the Lieutenants in identifying facility problems.
      3. This formal procedure is intended to supplement, not replace, informal methods of complaint resolution.

   B. Procedures
      1. All inmates of the Patrick County Jail shall have access to this procedure.

      2. Inmates must start with an informal grievance:
         a. The inmate should make his grievance known to the deputy on duty, during the shift in which the problem occurred. The deputy shall attempt to resolve the problem verbally prior to the end of the shift.
         b. Most problems, concerns or grievances, which arise during an inmate's period of incarceration, can be handled promptly and without much difficulty without filing a written formal grievance. Inmates are therefore encouraged to use the informal (verbal) procedures to resolve their problems.
         c. If the grievance is not settled verbally, the inmate shall have the deputy bring him a Complaint Request Form. The inmate will fill out this form sign and date it and give to the deputy. The deputy shall have a shift sergeant or shift leader view and answer the form. If the problem is not resolved, the inmate shall have the supervisor sign a blank grievance form with a response before proceeding with the written formal procedure.
         d. The grievance will not **be processed** if there was no attempt to handle it informally.

      3. No inmate will be punished for filing a grievance. However, if action is commenced by the Sheriff or his designee pursuant to an inmate grievance, and it is determined that the inmate perjured himself (that is,

the inmate lied), the Sheriff's Department will take all necessary steps to insure that such inmate is fully punished within the bounds of applicable law and/or Security Rules for Inmates.

4. Any inmate who desires to file a formal grievance:
   a. If your grievance was not resolved informally, complete the formal written section as indicated on the grievance form and forward to the Supervisor describing any formal complaint concerning an incident, policy, or condition within the jail.
   b. The Supervisor shall submit a written response of his investigation to the grievant within 9 working days. The grievant may appeal this decision to the Lieutenants.
   c. When a grievance is appealed to the Lieutenants, it shall be responded to within 9 working days by returning a written decision and the reason for his decision to the grievant. The Lieutenants may interview the grievant and make any further investigation he deems necessary in reaching his decision. If the Lieutenants find the grievance to be non-grievable [sic] matter the process will terminate at that point. The grievant will have the right to appeal the Lieutenants [sic] decision to the Sheriff. When a grievance is appealed to the Sheriff, he will respond in writing within 9 working days to the grievant stating his decision and the reason for the decision.
   d. The Sheriff is the **final** appeal process for a grievance.

5. Duplicates of an inmate's grievances, **or** complaints whose substance **was** addressed in a previous grievance by the same inmate, are not required to be answered in writing, since they are not considered to be grievances under the Jail Policy.
   a. If the Lieutenant determines that the inmate's 'duplicate complaint' is an honest effort to clarify an answer to the original complaint, it will be answered within a reasonable time. If, however, the Lieutenant determines that the inmate's 'duplicate complaint' is an attempt to harass the jail staff through a 'paper war,' the complaint will merely be placed in the inmate's file.
   b. If an inmate has not received a written answer to an original grievance within (nine) 9 days, he should notify the Lieutenants on a plain sheet of paper. A copy of the Lieutenants original response **will be** supplied one time.
6. If an inmate is not satisfied with the Lieutenants [sic] determination on his grievance, he has the right to appeal to the Sheriff.
   a. All such appeals must be in writing, stating in detail all reasons **why** the inmate believes the Lieutenants [sic] decision should be overruled.
   b. All such appeals must be submitted within seven (7) days after receipt of the Lieutenants [sic] written response. If such appeals

> are not submitted within seven (7) days, the Lieutenants [sic] decision will be final.
> 7. Grievances filed by inmates of the Patrick County Jail **will** not be forwarded to any location to which the inmate may be transferred.8. Inmates desiring to communicate any matter to the Virginia Department of Corrections may forward such correspondence to:
>
> Virginia Department of Corrections
> PO Box 26963
> Richmond, Virginia 23261

Dkt. No. 38-1 at 9–10.

The import of stating in full the different grievance procedures identified by the defendants is to illustrate that the Patrick County Jail has a adopted a cursory and somewhat ambiguous procedure to address inmate grievances. The Jail provides to inmates a more detailed procedure which is similar in many respects, but different as to the steps involved and the persons to whom grievances are submitted. Major Coleman described the grievance process in his affidavit through a combination of the different procedures.

According to Major Coleman, the first step of the grievance procedure is to verbally report the complaint, informally, to a deputy on duty, during the shift in which the problem occurred. If the inmate's concern is not resolved, he must request and complete a Complaint/Request Form from the deputy, date and sign it, and return it to the deputy, who will then deliver it to the shift sergeant or shift leader for a response. If the inmate's concern is not resolved, he must ask the sergeant or shift leader to sign "a blank Grievance Form with a response." Dkt. No. 38-1 at 3, ¶ 11. The inmate may then file a formal grievance regarding the issue, by completing the formal written section on the grievance form and forwarding it to the Supervisor, who has nine working days to provide a written response. If not satisfied with the Supervisor's written response, the inmate must appeal to a Lieutenant, who has nine working days to return a written response. Finally, the inmate must appeal to the Sheriff, who has nine

working days to return written response. An inmate must complete each of these steps to exhaust the grievance process.  Further, a formal grievance will not be processed if the inmate has not attempted to resolve the matter informally.  Major Coleman states that the Patrick County Jail has no record of a grievance filed by Goad.

Major Coleman's affidavit attaches both grievance procedures, a Complaint/Request Form, a Grievance Form, and an Appeal form for appealing decisions to the Lieutenants and Sheriff.  Dkt. No. 38-1, ¶¶ 5 – 21. A review of the Patrick County Jail's adopted grievance procedures differs from Major Coleman's description of the process. The official policy requires the inmate to navigate an informal grievance that "should be known to a deputy on duty" during the shift in which the problem occurred. The inmate should attempt to work out the problem verbally, and if unsuccessful, request a "Complaint Request Form," but the policy does not indicate to whom that request is directed. The inmate completes this complaint form and returns it to a deputy who provides it to a shift supervisor for review and a response. If the problem remains unresolved, the inmate may proceed with a written formal grievance which must be in writing, dated and signed and "forwarded through the chain of command to the Lieutenant, Master Deputy, or Sergeants that [sic] is not involved in the grievance." The Lieutenant or Master Deputy must review the grievance and reply within nine working days. (It is not clear why the sergeants could receive the complaint if they do not render a formal response). The next step of the procedure states that "after the Lieutenant has rendered his/her decision regarding the grievance" (omitting the Master Deputy from the group of officials who can respond to a formal grievance). The inmate may then take the decision to the Sheriff in the final step. Major Coleman's affidavit more closely tracks the grievance procedure given to inmates rather than the policy "promulgated" by the Patrick County Jail.

It is unclear why the Patrick County Jail has two similar grievance procedures which differ in some of the requirements for an inmate to address grievances. It is also unclear which of the procedures the Jail actually follows. The parties do agree that Goad did not file a formal grievance and has not exhausted his remedies. Goad claims that jail officials frustrated his efforts to grieve his claims at the informal grievance process. Goad filed an unverified opposition to the Motion for Summary Judgment denying that he received an Inmate Rules and Regulations Handbook, or the exhaustion procedures attached to the defendants' motion for summary judgment. Goad stated that he asked Deputy Nester for a request form or a grievance, and Nester just walked away. He asked Deputy Dillon, who wanted to know why he wanted a grievance form, and Goad asked him to get the Sargent on duty; his request was denied. He asked Sgt. Frick about a grievance and was denied. Then he was moved to segregation and a few days later, was transferred to Henry County Jail. Dkt. No. 40.

The defendants urge the court to disregard Goad's factual claims in his opposition, because as an unverified pleading, it is not sufficient to create a *genuine* dispute of material fact as to whether the grievance process was avaible to him. Dkt. No. 41. Importantly, the defendants do not submit any affidavits or other evidence to dispute Goad's claim that he attempted to informally grieve his claims.

## II. Legal Standards

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence presented would allow a reasonable factfinder to find in favor of the non-moving party. *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir.

2024). Further, the court must view the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Id.*

Failure to exhaust is an affirmative defense for which the defendants have the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007). If defendants show that an inmate failed to exhaust all available remedies, the inmate's lawsuit is defeated. 42 U.S.C. § 1997e(a). Once a defendant has shown that a plaintiff did not exhaust administrative remedies, the burden shifts to the plaintiff to show that a remedy was not available. *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Webster v. Russell,* No. 7:16-cv-00487, 2018 WL 4515888, at *2 (quoting *Tuckel*, 650 F.3d at 1254). A remedy is unavailable "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). If a remedy is "unavailable" to the inmate, then he does not have to exhaust that remedy. *Ross v. Blake*, 578 U.S. 632, 642 (2016). For example, a remedy is unavailable if it is a "dead end," because prison officials are consistently unable or unwilling to provide any relief; if the process is "so opaque" that no ordinary prisoner could understand or navigate the process; or if prison officials use manipulation, misrepresentation, or intimidation to prevent an inmate from taking advantage of the process. *Ross*, 578 U.S. at 643–44.

### III. Discussion

There is no dispute that Goad did not exhaust his administrative remedies, as he admitted in his Complaint that he did not file any grievances about the incident. Compl., p. 2, ¶ D. Importantly, however, Goad disputes whether the grievance process was "available" to him. This is a material issue which the defendants do not address. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished). While defendants are correct that regular pleadings are not sufficient to contradict sworn affidavits submitted in support of a motion for summary judgment,

a plaintiff may rely upon a *verified* Complaint when the allegations contained in the Complaint are based on the plaintiff's personal knowledge. *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).[2] Defendants fail to address that Goad's Complaint was verified, and he alleged that he had asked for grievance forms and was denied. Compl. at 2.[3] Further, Goad pled in the Complaint that he had trouble getting the names of the involved deputies and that "several other grievances have been asked for," which can be interpreted as multiple requests for grievance forms, without success. *Id.* at 3.

The Patrick County grievance procedure makes clear that Formal Grievances "will not be processed" if there was no attempt to resolve the matter informally. Goad's complaint raises the issue that members of the Patrick County Sheriff's Department prevented him from pursuing the informal resolution of his complaint. Goad alleges he tried to talk to several deputies, no one helped him resolve the situation, and no one would give him any form, be it a Grievance Form or a Complaint/Request.

The Fourth Circuit has warned that when a pro se prisoner has "preemptively addressed the issue of administrative exhaustion in his verified complaint, he did not have to do so again by submitting an affidavit in response to the Officers' motion for summary judgment." *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025). That is our situation here. Goad raised the issue of

---

[2] Pro se pleadings are afforded liberal construction, but an unsworn response to a motion for summary judgment is not a substitute for the requirements of the Federal Rules of Civil Procedure that a plaintiff must respond to the motion for summary judgment with admissible evidence and sworn affidavits or declaration. *See Baker v. Corbin*, 2017 WL 1378419 *3 (W.D. Va. April 12, 2017). The *Roseboro* notice filed after the defendants moved for summary judgment gave the plaintiff fair warning of this requirement. Dkt. 39.

[3] The verification stated that he was the plaintiff in the action and that the contents of his complaint were true of his own knowledge; at the end, he declared "under penalty of perjury the foregoing to be true and correct." Compl. at 4. This meets the requirements of Rule 56(c)(4) and of 28 U.S.C. § 1746.

administrative exhaustion in his verified complaint, and the defendants' motion for summary judgment does not effectively challenge, or even address, Goad's allegation that the grievance process was unavailable to him because no one would provide him with the required grievance form. Accordingly, whether Goad was denied the opportunity to exhaust his administrative remedies here creates a genuine dispute on an issue of material fact, and I will deny the motion for summary judgment.

    An appropriate order will be entered this day.

Entered: November 25, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

10